**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTINA ANASI,

Defendant.

______________________________/

Case No. 23-cr-20296-3

Hon. Jonathan J.C. Grey

**OPINION AND ORDER DENYING IN PART DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND GRANTING REQUEST FOR EVIDENTIARY HEARING (ECF Nos. 114, 117)**

## I. INTRODUCTION

On June 19, 2026, Defendant Christina Anasi, a noncitizen, moved to withdraw her guilty plea entered on August 20, 2024.[1] (ECF Nos. 114, 117.) Moreover, Anasi requests, "to the extent the Court finds it necessary to rule on this motion, that the Court conduct an evidentiary hearing to resolve factual disputes raised herein." (ECF No. 117, PageID.989.) The motion is fully briefed. (ECF Nos. 119, 125.)

[1] ECF No. 117 is the sealed version of the motion. This opinion cites to ECF No. 117, but simply refers to "the motion" throughout the order.

On August 5, 2026, the Court held a hearing on the motion. For the reasons below, the Court **GRANTS** Anasi's request for an evidentiary hearing to resolve factual disputes raised on the motion and **DENIES IN PART** her motion to withdraw guilty plea.

## II. BACKGROUND

On June 1, 2023, Anasi was arrested and appeared on a criminal complaint charging her with conspiracy to commit an offense against the United States; conspiracy to commit wire fraud and bank fraud; substantive wire fraud; substantive bank fraud; money laundering; and false statements in connection with a bank loan. (ECF No. 1.) The charges arose out of allegedly fraudulent Paycheck Protection Program ("PPP") loan applications. (ECF No. 117, PageID.994.) Anasi claims that her role in the conspiracy was minimal relative to her co-defendants, Samer Kammo and Rita Shaba, and "**[i]f anything**, her involvement was limited to sending emails, verifying information, and preparing documents at the direction of others." (*Id.* (emphasis in original).) On August 26, 2025, both of Anasi's co-defendants entered guilty pleas before this Court, and both have been sentenced. Sentencing in Anasi's case has not yet occurred.

Anasi contends the following. On March 22, 2024, AUSA Andrew Yahkind sent a formal Rule 11 plea offer to her prior defense counsel Efstathios "Steve" T. Kiousis. (*See* ECF No. 117-1, PageID.1027.) The offer called for Anasi to plead guilty to one count of conspiracy to commit wire fraud and bank fraud and acknowledged a loss of $1.5 million to $3.5 million and an enhancement for sophisticated means. (*Id.*) The government anticipated a guideline range of 37 to 46 months' imprisonment [redacted]. (*Id.*) The AUSA warned that if Ms. Anasi proceeded to trial and was convicted, her guideline range could be 102 to 127 months, with a 24-month mandatory minimum for aggravated identity theft. (*Id.*)

Anasi contends that Kiousis' "advice was centered around a single objective: securing Ms. Anasi's guilty plea as quickly as possible, [redacted]" (ECF No. 117, PageID.995.) Anasi alleges that Kiousis repeatedly told her that she had "no choice" and "no options" but to plead guilty, that she would "go down for 20 years

or more" if she went to trial, [redacted]. (*Id.*) She maintains that at no point during his representation did Kiousis tell her that her conviction renders her *mandatorily* deportable with no discretionary relief available—he only told her that she may be deported. (*Id.* at PageID.990, 995.) She alleges he also failed to review any discovery materials with her. (*Id.*) As such, she did not know what evidence the government possessed against her, her possible defenses, e, or available alternative courses of action . (*Id.* at PageID.995–996.) Put simply, she argues that her guilty plea was not entered knowingly, intelligently, or voluntarily.

On December 1, 2025, Anasi's new attorney, Wade Fink, appeared in this matter, substituting Kiousis. (ECF No. 69.) The parties stipulated to adjourn Anasi's sentencing from January 7, 2026 to April 16, 2026 so that Fink could "review and analyze any potential motions to be filed and/or to prepare for sentencing." (ECF No. 81, PageID.505.) Finally, on June 19, 2026, Anasi filed her motion to withdraw her guilty plea. (ECF No. 114.)

## III. LEGAL STANDARD

### A. Withdrawal of Guilty Plea

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that "[a] defendant may withdraw a plea of guilty" before sentencing if she "can show a fair and just reason for requesting the withdrawal." "[T]he aim of th[is] rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam) (citation omitted).

### B. Evidentiary Hearing

The Sixth Circuit has held that a district court "must hold an evidentiary hearing" when the movant presents "a factual narrative . . . that is neither contradicted by the record nor inherently incredible." *Pola v. United States*, 778 F.3d 525, 532–533 (6th Cir. 2015). Moreover, "[w]hen the decision . . . turns on credibility issues, then 'resolution on the basis of affidavits can rarely be conclusive.'" *Id.* at 535.

## IV. ANALYSIS

Anasi bases her "fair and just reason for requesting the withdrawal" on an ineffective assistance of counsel claim. She argues

that Kiousis' performance was deficient because he: (1) failed to advise Anasi that a plea *will* result in deportation (the "*Padilla* issue"); and (2) failed to review discovery with Anasi, discuss possible defenses, analyze strengths and weaknesses of the evidence, or attempt to negotiate a more favorable resolution (the "defense issue"). The Court takes each in turn.

## A. Ineffective Assistance of Counsel

### *1. Padilla* Issue

#### i. *Strickland* Prong One: Deficient Performance

Anasi first argues that she received constitutionally ineffective assistance of counsel under *Padilla v. Kentucky* and *Strickland v. Washington*. A defendant arguing ineffective assistance of counsel under *Strickland* must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). To demonstrate deficiency, Anasi "must show that [her] attorney's performance 'fell below an objective standard of reasonableness.'" *O'Neal v. Bagley,* 743 F.3d 1010, 1019 (6th Cir. 2013). To demonstrate prejudice, Anasi must show "a reasonable probability" that "but for such conduct the outcome of the proceedings would have been different." *Williams v. Anderson,* 460 F.3d 789, 800 (6th Cir. 2006). Further, the Supreme Court

in *Padilla* held that ineffective assistance of counsel claims "can extend to an attorney's sufficiently poor advice regarding the immigration consequences of criminal pleas." *Maiyo v. United States*, 576 F. App'x 567, 570 (6th Cir. 2014) (citing *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010)).

In *Padilla v. Kentucky*, a noncitizen faced deportation after pleading guilty to drug-distribution charges. 559 U.S. 356, 359 (2010). The noncitizen filed a motion for post-conviction relief, alleging that his attorney was ineffective because "not only [did he] fail[] to advise him of th[e] consequence [of deportation] prior to his entering the plea, but also told him that he did not have to worry about immigration status since he had been in the country so long." *Id.* (internal quotation marks and citations omitted). The noncitizen alleged that he would have insisted on going to trial if he had not received incorrect advice from his attorney. *Id.*

The Supreme Court in *Padilla* only addressed the first *Strickland* prong (i.e., constitutional deficiency) and held that "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. "But when the deportation consequence is truly clear, as it was in this case, the duty

to give correct advice is equally clear." *Id.*

Anasi maintains that because the relevant immigration statute is unambiguous and mandates Anasi's deportation,[2] Kiousis' warning that Anasi *may* be deportable is constitutionally deficient. The Court disagrees and finds that Kiousis satisfied the standard under *Padilla*.

While Anasi argues that *Padilla* requires counsel to "deliver an affirmative warning that the plea *will* result in deportation" when the immigration statute is "succinct, clear, and explicit" (ECF No. 117, PageID.1003 (emphasis added)), the Supreme Court in *Padilla* was not so unequivocal. In context, the Court stressed that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the noncitizen's] conviction[,]" but "[i]nstead, [the noncitizen's] counsel provided him false assurance that his conviction would not result in removal from this country." *Id.* at 368.

---

[2] Specifically, Anasi states the following:

> Conspiracy to commit wire fraud and bank fraud under 18 U.S.C. § 1349, where the loss exceeds $10,000, is an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). The stipulated loss is $1.5 to $3.5 million. *See* ECF No. 40 at PageID.242. Thus, deportation is mandatory under 8 U.S.C. § 1227(a)(2)(A)(iii). No form of discretionary relief is available. 8 U.S.C. §§ 1229b(a)(3), 1158(b)(2)(A)(ii), 1229c(b)(1)(C).

(ECF No. 117, PageID.1004.)

"This is not a hard case in which to find deficiency: The consequences of [the noncitizen's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368–369.

The facts here differ significantly from *Padilla*. Kiousis advised Anasi of potential deportation and never gave patently incorrect or false assurances. In an unpublished case with similar facts, the Sixth Circuit held that the advice provided by the noncitizen's attorney was not deficient and satisfied *Padilla*. In *Maiyo v. United States*, the noncitizen's attorney informed him that deportation was only a "possibility" following his guilty plea. 576 F. App'x 567, 568–569 (6th Cir. 2014). The noncitizen alleged an ineffective assistance of counsel claim, contending that the crime to which he pleaded guilty was a deportable defense such that his deportation was not merely a "possibility" but much more certain. *Id.*

Ultimately, the Sixth Circuit in *Maiyo* held that the noncitizen's attorney did not provide ineffective assistance because "[n]othing his attorney said or did not say ran afoul of the requirement of *Padilla* that an attorney advise a client 'whether his plea carries a *risk* of deportation'"—both the attorney and the colloquy demonstrates that the

noncitizen "'was on notice that 'his plea carrie[d] a risk of deportation.'" *Id.* at 570 (quoting *Padilla*, 559 U.S. at 374). *See also Thauberger v. United States*, *No.* 3:14-CR-00111-GNS-CHL, 2019 WL 5692653, at *4 (W.D. Ky. Nov. 4, 2019) (citing *Maiyo* in an aggravated felony prosecution and holding that "as long as counsel advises the client that pleading guilty carries a risk of deportation, not that deportation is 'assured,' counsel's performance cannot be deemed deficient."). So too here.[3]

Anasi argues that the Court cannot rely heavily on *Maiyo* because it is unpublished and predates *Lee v. Unites States*, 582 U.S. 357 (2017). However, *Lee* did not address the question of deficiency because the government conceded that the noncitizen's counsel had performed deficiently. 582 U.S. at 364. The only issue *Lee* addressed was whether the noncitizen was *prejudiced* by the attorney's erroneous advice. *Id.*

Anasi also argues that in *Maiyo*, unlike here, there is a curative statement because the district court told the defendant at his plea colloquy that his conviction "will subject you to deportation from the

[3] The government spends a portion of their brief explaining other avenues for immigration relief Anasi may qualify for to support their argument that Kiousis' advice was accurate. (*See* ECF No. 119, PageID.1064–1066.) Anasi responds that these avenues for relief fail. (ECF No. 125, PageID.1142–1143.) Because the Court finds that Kiousis satisfied the *Padilla* standard regardless, as discussed above, the Court need not and does not address this argument.

United States." 576 F. App'x at 570. However, Anasi places too much weight on this statement because the district court immediately backtracked after receiving further information that the noncitizen may qualify for other avenues for relief and asked, "do you understand that deportation is a *possibility* in your case[?]" *Id.* at 570 (emphasis added).

Accordingly, the Court finds that Anasi did not satisfy the first *Strickland* prong, and her ineffective assistance of counsel claim based on *Padilla* fails.

### ii. *Strickland* Prong Two: Prejudice

Even if Kiousis' conduct was constitutionally deficient, Anasi fails to show that the deficient performance prejudiced her. Anasi correctly notes that under *Strickland*, she must show a reasonable probability that, but for counsel's deficient performance, she would not have pleaded guilty and would have insisted on going to trial—or, alternatively, that she would have bargained for a plea to a non-removable offense. *See Strickland*, 466 U.S. at 694; *Rodriguez-Penton v. United States*, 905 F.3d 481, 488 (6th Cir. 2018). While Anasi argues that both pathways support a finding of prejudice, the government contends otherwise.

Regarding the first inquiry—whether there is a reasonable

probability that, but for Kiousis' deficient performance, she would have insisted on going to trial—Anasi must demonstrate that going to trial "'would have been rational'" under the circumstances of her case, which is an objective inquiry. *United States v. Singh*, 95 F.4th 1028, 1033 (6th Cir. 2024) (quoting *Lee*, 582 U.S. at 370). Next, Anasi "must point to evidence contemporaneous with [her] plea showing it's reasonably likely *[s]he* would have taken that route." *Id.* (emphasis in original) (citing *Lee*, 582 U.S. at 369). "Only in 'unusual circumstances' will a defendant who conceded guilt at the plea stage be able to meet this 'high bar.'" *Id.* at 1033–1034 (quoting *Lee*, 582 U.S. at 368–369).

In analyzing the prejudice prong, *Singh* is instructive. In *Singh*, the Sixth Circuit held that the defendant's ineffective assistance of counsel claim fails because he could not demonstrate a reasonable probability that, but for his counsel's advice, he would have proceeded to trial. *Id.* at 1034. There, the defendant did not cite any evidence contemporaneous with his plea to support his assertions that he was "greatly concerned" about his citizenship. *Id.* Further, "the contemporaneous evidence cut[] against" the defendant where:

> In the written plea agreement, [the defendant] stated his decision to plead guilty was in 'no way conditioned upon or

> affected by the advice he has been given regarding any potential immigration consequences' . . . [and] confirmed: his decision to plead was 'wholly independent of the immigration consequences of a conviction.' . . . And when the district court told [the defendant] the plea could affect his citizenship, [the defendant] expressed no reservations, twice confirmed that he understood, and pled guilty anyway. *Cf. Lee*, 582 U.S. at 369.

*Id.* "In the face of this evidence, [the defendant] can't demonstrate a reasonable probability that, but for his counsel's advice, he would have proceeded to trial." *Id.*

Similarly, the contemporaneous evidence here cuts against Anasi. As the government notes, Anasi specifically "underst[ood] that . . . her conviction . . . may require her to be removed from the United States" and nevertheless "affirm[ed] that [she] chooses to plead guilty regardless of any immigration or other consequences from her conviction." (ECF No. 40, PageID.240–241.) Moreover, at the plea hearing, the government's counsel expanded on the court's warning that there might be immigration consequences to Anasi and specifically noted that she is "not a U.S. citizen" and he "[w]ant[ed] the record to be clear that she may very well be removed. She may be denied citizenship in the future and she may be denied admission into the United States in the future." (ECF No. 90, PageID.640.) After these warnings, Anasi pleaded guilty. Under these

circumstances, the Court finds that Anasi failed to demonstrate a reasonable probability that, but for Kiousis' advice, she would have proceeded to trial.

Anasi also argues that Kiousis prejudiced her in another way: but for his advice, she would have bargained for a plea to a non-removable offense. *See Rodriguez-Penton*, 905 F.3d at 488; *see also Singh*, 95 F.4th at 1034. "Under our precedent, defendants can show prejudice by establishing that, but for counsel's advice, it's reasonably probable they would've rejected the government's plea offer and successfully negotiated a better one." *Singh*, 95 F.4th at 1034 (citations omitted). "But this too is a difficult standard to meet. At a minimum, a defendant must show, based on contemporaneous evidence, that it's reasonably probable he would've rejected the plea offer, the government would've offered a better one, he would've accepted that offer, and the trial court would've approved the deal." *Id.* (citations omitted). Defendants can also demonstrate prejudice by "'identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense.'" *Rodriguez-Penton*, 905 F.3d at 488 (quoting *United States v. Rodriguez-*

*Vega*, 797 F.3d 781, 788 (9th Cir. 2015)).

Anasi does not point to any facts that show she could have negotiated a better plea deal. She argues, instead, that "she would have given the government an ultimatum: try me or give me a deal that won't result in removal." (ECF No. 117, PageID.1009–1010.) However, there is no indication or contemporaneous evidence that the government would have offered or agreed to a better deal, or that a better deal was offered in similar cases—this is entirely conclusory. (*Id.*) In fact, Kiousis stated that "it is unlikely to get the amount down under $10,000 given the amounts at issue in this case," and Anasi does not rebut that point. (*Id.*; *see also* ECF No. 119, PageID.1070–1071.) Nor does Anasi identify any plea agreements to non-removable offenses that were reached by other defendants charged with a similar crime. *See Rodriguez-Penton*, 905 F.3d at 488. For these reasons, the Court finds that Anasi is not entitled to withdraw her guilty plea on the *Padilla* issue.

**iii. Evidentiary Hearing**

The Court further finds that an evidentiary hearing is not warranted on the *Padilla* issue because the Court makes its finding on the undisputed record before it, as presented by Anasi, and the decision

does not turn on credibility issues.

### 2. *Defense Issue*

Additionally, Anasi identifies a second deficiency in Kiousis' performance: that Kiousis did not: (1) review any discovery with Anasi, (2) discuss possible defenses, (3) analyze strengths and weaknesses of the evidence and whether it was strong enough to warrant the plea, (4) discuss whether it was worth proceeding to trial, or (5) attempt to negotiate a more favorable resolution. (ECF No. 117, PageID.1005.) She argues that her guilty plea could not be a "voluntary and intelligent choice among the alternative courses of action" if she has not been informed what those courses of action are or what their consequences will be. (*Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).) The government fails to address this argument in its response brief.

On the record before it, the Court cannot determine whether Kiousis' performance fell below an objectively reasonable standard on this second alleged deficiency or whether Anasi was prejudiced. Moreover, any ruling on the defense issue turns on credibility. Thus, the Court orders an evidentiary hearing as to the defense issue.[4]

[4] Anasi also argues that the *Bashara* factors, set out in *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), independently establish a fair and just reason for

**B. Waiver of Attorney-Client Privilege**

The course also finds that the communications between Anasi and Kiousis are waived to the extent necessary to litigate her ineffective assistance of counsel claim.

"The attorney-client privilege protects certain communications between an attorney and client from disclosure without the client's permission." *United States v. Ketzner*, No. 20-20346, 2023 WL 174943, at *1 (E.D. Mich. Jan. 12, 2023). It "applies at *all* stages of *all* actions, cases, and proceedings." *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005) (emphasis in original) (quoting Fed. R. Evid. 1101(c)). But "attorney-client privilege cannot be used as a sword and a shield at the same time." *United States v. Lossia*, No. 04-80422, 2008 WL 192274, at *1 (E.D. Mich. Jan. 23, 2008) (Pepe, M.J.) (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *Clark v. United States*, 289 U.S. 1, 15 (1933)).

A movant who raises an ineffective-assistance claim, or otherwise raises issues regarding their counsel's performance, impliedly waives the attorney-client privilege. *In re Lott*, 424 F.3d at 452–453. "The privilege is waived to the extent necessary to litigate [the movant's] ineffective

---

withdrawal. The Court refrains from addressing this argument until after the evidentiary hearing.

assistance of counsel claims." *Lossia*, 2008 WL 192274, at *1.

Anasi's communication with Kiousis is the central issue in her motion. She claims that he: never reviewed discovery with her; repeatedly told her she had no choice but to plead guilty; [redacted]; and failed to convey the significance of the plea hearing itself. (ECF No. 117, PageID.990.) "As litigation of [Anasi's] claims necessarily requires examination of protected communications, [s]he must waive the attorney-client privilege." *Lossia*, 2008 WL 192274, at *1 (citation omitted). Moreover, the government cannot properly address Anasi's claims without obtaining relevant communications. *Id.* The Court therefore finds that Anasi has implicitly waived attorney-client privilege by asserting ineffective assistance of counsel claims in her motion, and Anasi did not object at the motion hearing.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES IN PART AND GRANTS IN PART** Anasi's motion to withdraw guilty plea and for evidentiary hearing. (ECF Nos. 114, 117.)

**IT IS FURTHER ORDERED** that the Court **DENIES** Anasi's motion to the extent it argues ineffective assistance of counsel based on *Padilla*.

**IT IS FURTHER ORDERED** that the Court **GRANTS** Anasi's request for an evidentiary hearing related to the defense issue above.

**IT IS FURTHER ORDERED** that the government is permitted to obtain relevant communications between Anasi and Kiousis related to her claims of ineffective assistance of counsel on the defense issue, **but only to the extent necessary to litigate those claims.**

**IT IS FURTHER ORDERED** that Anasi is permitted to obtain relevant communications between Kiousis and the government pertaining to plea negotiations.

**IT IS FURTHER ORDERED** that the parties shall produce relevant materials **on or before September 21, 2026**.

**IT IS FURTHER ORDERED** that the evidentiary hearing shall take place on **November 16, 2026** at **1:00 p.m.**

**SO ORDERED.**

Date: August 21, 2026

**s/Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager